# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| **BRAJA SMITH,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:17-cv-00406-TES-MSH** |
| **FYE,** *et al.,*[1] | |
| *Defendants.* | |

## ORDER

Presently before the Court are Defendants Fye, Spikes, McLaughlin, Kegler, Searcy, Shirah, Fowlkes, Johnson, Miller, and Jackson's Motions to Dismiss and Supplemental Motions to Dismiss [Docs. 32, 76, 83, 86].[2] For the reasons that follow, the Motions to Dismiss [Docs. 32, 76] are **DENIED** and the Supplemental Motions to Dismiss [Docs. 76, 86] are **GRANTED IN PART** as to Plaintiff's requests for injunctive relief, which are mooted by his release from incarceration. Plaintiff is **ORDERED TO SHOW CAUSE** within 14 days of the date of this Order as to why the claims for injunctive relief against the remaining served Defendants, Ranson and Hamilton, should not also be dismissed for the same reasons as those against the moving Defendants.

---

[1] Several Defendants in this action were identified only by their last names in Plaintiff's Complaint [Doc. 1] and are identified as such on the docket.

[2] There are four Defendants who have not filed motions to dismiss (Ranson, Hamilton, Mims, and Toby), and only two of those Defendants have been served (Ranson and Hamilton).

Also pending before the Court are 14 motions filed by Plaintiff [Docs. 20, 31, 34, 39, 41, 50, 54, 59, 62, 67, 74, 80, 81, 88], all of which are **DENIED** (some as moot), <u>except</u> his first Motion for Joinder of Claims and Parties [Doc. 74], which is **GRANTED IN PART**.

## FACTUAL BACKGROUND

Plaintiff alleges that Defendants withheld medication and denied him medical treatment—or were complicit in those acts—and were therefore deliberately indifferent to his medical needs in violation of the Eighth Amendment. [Doc. 1, pp. 7-18]. In his Complaint, filed *in forma pauperis* ("IFP") on October 23, 2017, Plaintiff requested monetary damages, punitive damages, and an injunction "ordering [Georgia Department of Corrections ("GDC")] medical providers or GDC supervisors to transfer [him] to a medical facility." [*Id.* at p. 20].

The Court conducted a preliminary review of Plaintiff's complaint in accordance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a), and allowed Plaintiff's claims against the current Defendants to proceed. All of those Defendants, except Ranson and Hamilton, have moved to dismiss the complaint, arguing that Plaintiff's action is barred by the PLRA's three-strikes rule under 28 U.S.C. § 1915(g), that the imminent-danger exception to the three-strikes rule does not apply, that the imminent-danger exception operates only to allow claims alleging imminent danger to proceed, and that all requests for injunctive relief are moot now that Plaintiff has been

released from prison. In response, Plaintiff paid a partial filing fee on July 16, 2018, and argues that his previous cases do not count as strikes for the purposes of the PLRA.

## DISCUSSION

### A.    The Three-Strikes Rule, 28 U.S.C. § 1915(g)

Congress enacted the PLRA to reduce the flow of prisoner litigation into the courts and, in doing so, imposed several procedural limitations and requirements on prisoner plaintiffs. *See Jones v. Bock*, 549 U.S. 199, 202 (2007) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)) ("[The] PLRA [is] intended to 'reduce the quantity and improve the quality of prisoner suits.'"). 28 U.S.C. § 1914 allows prisoner plaintiffs to file their complaints without paying a filing fee and recognizes that prisoners are often indigent but have serious claims that are entitled to judicial review. However, the PLRA also limits a prisoner's ability to file complaints without paying a filing fee if he has previously filed at least three complaints that have been dismissed as frivolous or malicious or for failure to state a claim. 28 U.S.C. § 1915(g). This so-called "three-strikes" provision of the PLRA states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

*Id.*

In its preliminary review of Plaintiff's Complaint, the Court pointed to three previous IFP cases filed by Plaintiff in the federal courts that were dismissed for failure to state a claim: "*Smith v. Owens*, 5:12-cv-00292-MTT (M.D. Ga. 2013) (dismissed for failure to exhaust administrative remedies); *Smith v. Owens*, 6:12-cv-00107-BAE-JEG (S.D. Ga. 2013) (dismissed for failure to state a claim); *Smith v. Owens*, 6:13-cv-00002-BAE-JEG (S.D. Ga. 2013) (dismissed for failure to state a claim)." [Doc. 6, pp. 2-3]. The Court also noted that the Eleventh Circuit Court of Appeals previously determined that "the 'three strikes' provision of the Prison Litigation Reform Act of 1995 is applicable to Plaintiff." [*Id.* at p. 3 n.1]. Nevertheless, the Court allowed Plaintiff's claims to proceed because it determined that he met the requirements of the "imminent danger" exception found in the last clause of the three-strikes rule. [*Id.* at pp. 3-4].

Defendants now argue that the Court erred in finding that the imminent-danger exception applies and that, even if the exception does apply, it limits the claims that may proceed IFP to those that allege imminent danger and seek injunctive relief to remedy that danger. Plaintiff claims that the Court erred in finding that the three-strikes provision applies at all because he does not have three previous cases that count as strikes. The Court disagrees with each of these arguments.

1.  Plaintiff's payment of the filing fee

Before the Court determines whether some or all of Plaintiff's claims should have been permitted to proceed after initial review, it must address whether Plaintiff's

payment of the initial filing fee approximately nine months after filing suit moots any questions relating to the three-strikes rule. Plaintiff filed his complaint and moved for leave to proceed IFP on October 23, 2017. [Docs. 1, 2]. On July 16, 2018, over six months after the Court's initial review of his complaint and three months after the first motion to dismiss was filed, Plaintiff paid his initial partial filing fee of $350.00.

The Court can only assume that Plaintiff's payment of the filing fee was meant to preserve all of his claims, eliminating any question of the three-strikes rule and its applicability to this case. However, in *Dupree v. Palmer*, the Eleventh Circuit Court of Appeals expressly ruled that the payment of a filing fee after the dismissal of claims under the three-strikes rule does nothing to reinstate those claims since a three-strikes plaintiff "must pay the full filing fee at the time he *initiates* suit." 284 F.3d 1234, 1236 (11th Cir. 2002) (citing *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001)) (emphasis in original). Thus, Plaintiff's belated payment of the filing fee does nothing to cure the Court's potential dismissal of any of his claims under the three-strikes rule because he did not pay the fee at the time he initiated suit. Put simply, the only safeguard against the dismissal of Plaintiff's claims under the three-strikes rule would have been his payment of the full filing fee at the time he filed his complaint. Therefore, the Court proceeds to consider questions regarding the applicability of the three-strikes rule and its effects on Plaintiff's claims.

2.     Plaintiff's previous cases

First, Plaintiff argues that the three cases cited by the Court as strikes should not have been deemed to be strikes. He argues that *Smith v. Owens*, 6:12-cv-00107-BAE-JEG ("*Smith I*"), and *Smith v. Owens*, 6:13-cv-00002-BAE-JEG ("*Smith II*"), "are the same case which is still pending through the Ga. Court of Appeals or U.S. Court of Appeals under *Smith v. Bruton*, 6:13-cv-00115-JRH-RSB which was dismissed in part and remanded in part and affirmed in part." [Doc. 49, p. 1]. He also challenges the Court's determination that the dismissal of *Smith v. Owens*, 5:12-cv-00292-MTT ("*Smith III*"), for failure to exhaust administrative remedies counts as a strike under Section 1915(g).

As to Plaintiff's first argument that *Smith v. Bruton* is a pending appeal of *Smith I* and *Smith II*, a review of the dockets in all three cases reveal that they were all dismissed and are not related. While Plaintiff is correct that *Smith v. Bruton* was appealed to the Eleventh Circuit Court of Appeals, *see Smith v. Owens*, 625 F. App'x 924 (11th Cir. 2015), it was in no way connected to *Smith I* or *Smith II* and was dismissed on remand for failure to comply with a court order and failure to prosecute. *Smith v. Bruton*, No. 6:13-cv-115, 2016 WL 4487909 (S.D. Ga. July 15, 2016) *recommendation adopted by* 2016 WL 4487876 (S.D. Ga. Aug. 24, 2016). Moreover, *Smith I* and *Smith II* were dismissed for failure to state a claim on May 29, 2013, and June 10, 2013, respectively. *Smith v. Owens*, No. 6:12-cv-00107-BAE-JEG [Doc. 25]; *Smith v. Owens*, No. 6:12-cv-00002-BAE-JEG [Doc. 25]. Thus, *Smith I* and *Smith II* were properly considered as strikes against Plaintiff under the PLRA.

Also, the dismissal of *Smith III* for failure to exhaust administrative remedies was appropriately considered a strike under the PLRA. The three-strikes rule applies when a prisoner plaintiff has previously filed at least three complaints that have been dismissed as frivolous or malicious or for failure to state a claim. 28 U.S.C. § 1915(g). In the Eleventh Circuit, dismissals for failure to exhaust are counted as strikes. *See Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998) *abrogated on other grounds by Bock*, 549 U.S. at 314-15 (2007) (In the context of PLRA strikes, "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted."); *Brooks v. Brooks*, No. 2:18-cv-649-WKW, 2018 WL 3979490, at *1 n.2 (M.D. Ala. July 13, 2018) ("In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 921 (2007), the Supreme Court abrogated *Rivera* but only to the extent it compelled an inmate to plead exhaustion of remedies in his complaint as 'failure to exhaust is an affirmative defense under the PLRA . . . and inmates are not required to specifically plead or demonstrate exhaustion in their complaints.'"); *Green v. Lumpkin*, No. 5:15-cv-148-CAR-MSH, 2015 WL 4255874, at *2 (M.D. Ga. July 14, 2015) (counting a dismissal for failure to exhaust as a strike and citing *Rivera*). Therefore, the Court correctly determined that Plaintiff has three strikes that bring him under the purview of Section 1915(g).

### 3. Imminent danger exception

Having found that Plaintiff does, in fact, have three strikes, the Court turns to Defendants' arguments that the Court's previous finding of imminent danger was

incorrect and that, even if the exception applied, it should have limited Plaintiff's surviving claims to only those alleging imminent danger. The Court disagrees with Defendants and finds the imminent danger exception applies and that all of Plaintiff's claims were properly permitted to proceed.

To fall under the "imminent danger" exception to Section 1915(g), a plaintiff must allege an "ongoing serious physical injury, or . . . a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. District Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004)). However, the exception does not apply where there is no present danger or where the plaintiff "faced imminent danger sometime in the past." *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999).

On preliminary review, the Court found that Plaintiff sufficiently alleged imminent danger to meet the requirements of the exception to the three-strikes rule. [Doc. 6, pp. 3-4 ("Plaintiff alleges that he suffered a series of life threatening infections requiring intensive care and surgery and resulting in debilitating complications. According to Plaintiff, his condition[] has been made worse by Defendants['] past and *present* failure to provide him with proper and prescribed treatment . . . . He further alleges that he *is* being refused physical therapy prescribed by his physicians. The undersigned accepts these facts as true, as is required at this stage, and finds them sufficient to satisfy the imminent danger exception.") (emphasis added).

Defendants first argue that the Court erroneously applied the imminent-danger exception to this case because "the allegations on which this finding are based are backwards looking, not present and imminent." [Doc. 32-1, p. 3]. However, the Court specifically indicated that Plaintiff alleges present danger in his initial complaint. Indeed, Plaintiff alleges that he "*is* being denied physical therapy," [Doc. 1, p. 15] (emphasis added), that "Unit Manager Kegler has and *continues* to exercise deliberate indifference by delay/denying Plaintiff treatment as well as medication," [*id.* at p. 18] (emphasis added), and that "[s]ince filing several grievances on UM Kegler, he has told nurses to refuse vital medication. . . . He *is* also refusing to have Plaintiff escorted to physical therapy." [*Id.*] (emphasis added). Each of these allegations contains dangers that were present at the time Plaintiff filed his complaint. Accordingly, the Court's initial finding of imminent danger was proper.

Defendants now ask the Court to refine that ruling to hold that only Plaintiff's request for injunctive relief—and not his requests for monetary and punitive damages—is allowed to proceed. Defendants concede that "[t]here appears to be no Eleventh Circuit ruling directly dealing with this situation," but argue that "persuasive authority from other federal courts indicates that the 'imminent danger' exception exists only to provide relief from that danger." [Doc. 32-1, p. 4]. Defendants cite cases from district courts in Virginia and Massachusetts to support their arguments, *see Johnson v. Warner*, No.

7:05cv00219, 2006 WL 4119686, at *2 (W.D. Va. Mar. 8, 2006)[3] *and Crooker v. United States*, No. 11-10495-RWZ, 2011 WL 1375613, at *2 (D. Mass. Apr. 12, 2011),[4] but the Eleventh Circuit appears to take the opposite tack.

For example, in *O'Connor v. Backman*, No. 17-12882, ___ F. App'x ___, 2018 WL 3701680 (11th Cir. Aug. 3, 2018), the Eleventh Circuit reversed the district court's denial of the plaintiff's motion for leave to proceed IFP upon a finding of imminent danger and allowed the entire complaint to move forward, not merely the claims alleging imminent danger, and specifically noted the plaintiff's ability to amend his complaint to presumably add more claims or parties.[5] The court did the same thing in *Barber v. Krepp*, 680 F. App'x 819 (11th Cir. 2017), and in doing so, it noted that "it is very possible that some or all of [the plaintiff's] claims may be subject to dismissal for reasons other than his status as a 'frequent filer.' But section 1915(g) concerns only a threshold procedural

---

[3] "The exception to the three strikes rule of the [PLRA] focuses on the risk that the conduct complained of threatens continuing or future injury, not whether the inmate deserves a remedy for past misconduct.' *Martin v. Sheldon*, 319 F.3d 1048, 1050 (8th Cir. 2003). . . . [A] prisoner may invoke the 'imminent danger' exception under § 1915(g) only to seek relief from a danger which is 'imminent' at the time the complaint is filed. Accordingly, the only claims plaintiff can prosecute without full prepayment of the filing fee pursuant to the imminent danger exception in § 1915(g) are such claims that . . . sufficiently established the existence of an imminent danger of serious physical harm. All other claims and defendants thereto shall therefore be dismissed." 2006 WL 4119686, at *2 (internal citations omitted).

[4] "In order to invoke the imminent danger exception of the three-strikes rule, two elements must be met: the harm must be *imminent* and the claim for relief asserted must be for the *alleviation* of that threat of harm." 2011 WL 1375613, at *2 (emphasis in original).

[5] "[S]everal of Mr. O'Connor's claims have substance and satisfy the 'imminent danger' standard. Based on the record before us, we reverse and remand the dismissal of Mr. O'Connor's complaint. . . . He should be allowed to proceed in forma pauperis under § 1915(g). Also, he should be given the opportunity to amend his complaint, if required." 2018 WL 3701680, at *3.

question—whether the filing fee must be paid upfront or later," and the district court is tasked with parsing through meritorious and frivolous claims later on in the litigation. 680 F. App'x at 822; *cf. Mitchell v. Nobles*, 873 F.3d 869, 874-75 (11th Cir. 2017) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004)) ("[W]e must consider 'whether [the plaintiff's] complaint, *as a whole*,' satisfies the imminent-danger standard, not whether each particular allegation taken alone is sufficient. . . . Because [the plaintiff] alleged a total lack of hepatitis treatment and the resulting onset of cirrhosis, [his] *complaint* falls within the imminent-danger exception to the three strikes provision. We reverse the District Court's decision to the contrary.") (emphasis added) (internal citations omitted); *Allah v. Gramiak*, No. 5:13-CV-186 (MTT), 2015 WL 269478, at *3 n.3 (M.D. Ga. Jan. 21, 2015) ("[Defendant] also argues Allah is not entitled to recover money damages as a 'three-strike' plaintiff because his request for injunctive relief is now moot because [the defendant] no longer works at the prison, and a 'three-strike' inmate cannot proceed *in forma pauperis* on a claim for money damages. . . . [N]one of the cases [the defendant] cites compels the conclusion that a 'three-strike' plaintiff allowed to proceed under the imminent danger exception can no longer proceed *in forma pauperis* because equitable relief became unavailable during post-screening litigation."); *Logue v. Pearson*, No. CV410-240, 2011 WL 2457501, at *1 n.1 (S.D. Ga. June 16, 2011) ("Even though Logue is proceeding under the § 1915(g) imminent danger exception to the three-strikes *in forma pauperis* bar, and his own complaint admissions show that he is no longer under

imminent danger, it is generally accepted that once the exception has been invoked, it persists throughout the case despite any post-complaint changes in circumstances.").[6]

Accordingly, the Court was correct to allow all of Plaintiff's claims to proceed upon its finding of imminent danger, and Plaintiff's claim for compensatory and punitive damages are properly before the Court. Defendants' Motions to Dismiss [Docs. 32, 76] are therefore **DENIED**.

## B. Plaintiff's Claims for Injunctive Relief

Regardless of the Court's finding that all of Plaintiff's claims were permitted to proceed upon the finding of imminent danger, Defendants are correct that his release from incarceration on July 13, 2018 moots his claims for injunctive relief. *See Coen v. Georgia Dep't of Corr.*, No. 5:16-CV-00353-MTT, 2018 WL 4365503, at * (M.D. Ga. Sept. 13,

---

[6] Notably, the Seventh and Ninth Circuits agree with this approach:

> The defendants claim [the plaintiff's transfer from state prison to county jail] moots the case because frequent filers can only file claims for prospective relief under 28 U.S.C. § 1915(g). However, § 1915(g) does not have such a broad reach. It limits when frequent filers can proceed IFP, and says nothing about limiting the substance of their claims. Thus, the case is not moot.

*Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003).

> We further conclude . . . that once a prisoner satisfies the exception to the three-strikes rule and otherwise qualifies for IFP status, the district court must docket the entire complaint and resolve all of its claims, without requiring the upfront payment of the filing fee. . . . [I]f Andrews's Eighth Amendment claim alleged that he faced an 'imminent danger' at the time he filed the complaint, § 1915(g) allows his entire lawsuit to proceed IFP even if Andrews otherwise met the three-strikes criteria.

*Andrews v. Cervantes*, 493 F.3d 1047, 1053-54, 1055 (9th Cir. 2007).

2018) (citing *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (per curiam)) ("Claims for declaratory and injunctive relief are mooted by a prisoner's release from prison.").

Therefore, Defendants' Supplemental Motions to Dismiss [Docs. 83, 86] are **GRANTED IN PART**, and Plaintiff's request to be transferred to a medical facility and all other requests for injunctive relief against the moving Defendants are **DISMISSED as moot**.[7] Plaintiff is **ORDERED TO SHOW CAUSE** as to why his claims for injunctive relief against the non-moving Defendants should not also be dismissed as moot. *See Danow v. Borack*, 197 F. App'x 853, 856 (11th Cir. 2006) (citing *Jefferson Fourteenth Assocs. v. Wometco de P.R., Inc.*, 695 F.2d 524, 527 (11th Cir. 1983)) ("[P]ursuant to our controlling case precedent, we reverse and remand the district court's *sua sponte* dismissal . . . . [T]he district court must provide notice of its intent to dismiss the claims for failure to state a claim and an opportunity for [the plaintiff] to respond prior to dismissing the claims.").

C.  **Plaintiff's Motion to Amend Complaint [Doc. 80] and Motions for Joinder of Claims and Parties [Docs. 74, 81]**

Also pending before the Court are Plaintiff's Motion to Amend Complaint [Doc. 80] and Motions for Joinder of Claims and Parties [Docs. 74, 81]. Specifically, Plaintiff seeks to add "GDC Medical Contractors," Georgia Department of Corrections ("GDC")

---

[7] Due to its determination that all claims for injunctive relief are mooted by Plaintiff's release from prison, the Court need not address Defendants Fowlkes, Johnson, and Miller's argument that Plaintiff's claims for injunctive relief against them were mooted by his transfer to Macon State Prison from Georgia Diagnostic and Classification Prison or Defendant Fye's argument that the claims for injunctive relief against her were also mooted when she resigned from her position at Macon State Prison in October of 2017. *See* [Doc. 32-1, p. 6].

Commissioner Homer Bryson, the State of Georgia, and several GDC prison employees as defendants and wishes to add retaliation, access to courts, Americans with Disabilities Act ("ADA"), Rehabilitation Act ("RA"), and false imprisonment claims to his complaint. All of these requests, <u>other than his request to add ADA and RA claims</u> to his complaint, are denied.

1.  <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 15(a)(2), the Court should freely grant leave to amend when justice so requires. However, the Court may deny leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). An amendment is futile, for example, "when the complaint as amended is . . . subject to dismissal because . . . it fails to state a claim for relief." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (quoting *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004)).

Federal Rules of Civil Procedure 18 and 20 provide for the permissive joinder of claims and defendants into one action in limited circumstances. Generally, a party may join into one action "as many claims as it has against an opposing party," Fed. R. Civ. P. 18(a), but multiple defendants may only be joined into one action if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction,

occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2).

## 2. The Addition of GDC Medical Contractors as a Defendant

First, Plaintiff seeks to add the corporation "GDC Medical Contractors" as a defendant in this case. He contends that "GDC Medical Contractors is a private medical entity that hires out medical staff at all prisons/facilities in the State of Georgia" and that the entity is the "main defendant" in this action since "at all times mentioned in this action he was under the care of these/this private corporate entity." [Doc. 80, p. 2]. Plaintiff makes no specific allegations against "GDC Medical Contractors" in his complaint, which almost exclusively contains deliberate-indifference allegations against individual GDC doctors and medical staff members. Thus, the Court assumes that Plaintiff is attempting to add a claim for supervisory liability against the entity. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."). To state such a claim, Plaintiff must allege that the entity "had a policy or custom of deliberate indifference that led to his alleged constitutional violations." *Dunn v. Warden, Ware State Prison*, No. 16-16603-E, 2017 WL 5047902, at *4 (11th Cir. 2017) (citing *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)). In his motion, Plaintiff merely alleges that he was in the entity's care, which is insufficient to

state a claim for supervisory liability. The Court may deny a motion to amend where the amendment would be futile, and an amendment, like this one, is futile if it would fail to state a claim as alleged. *See Chang, supra.* Therefore, Plaintiff's request to add "GDC Medical Contractors" is **DENIED**.

        3.      <u>Retaliation Claim, Access-To-Courts Claim, and the Addition of GDC Prison Employees as Defendants</u>

Next, Plaintiff claims that Defendant McLaughlin, Warden of Macon State Prison, and prison mailroom officials interfered with his ability to litigate and appeal *Smith II* by failing to give him the order dismissing that case. [Doc. 74, pp. 1-2; Doc. 80, p. 2]. He also claims that Defendant McLaughlin conspired with several prison employees[8] to retaliate against him for filing *Smith II* by giving a copy of a document from the case to gang members. [Doc. 74, pp. 1-3; Doc. 80, pp. 2-3].

> Under Federal Rule of Civil Procedure 18(a), a plaintiff may generally bring as many claims as he has against a single party. Fed. R. Civ. P. 18(a). But a plaintiff may join multiple defendants in a single action only if the right to relief asserted against them arises "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a).

*Smith v. Owens*, 625 F. App'x 924, 928 (11th Cir. 2015).

The retaliation and access-to-courts claims Plaintiff seeks to add to this action do not arise out of the same transaction or occurrence alleged in his complaint (i.e., prison

---

[8] Plaintiff seeks to add "COII/Cert Hall, COII Hall (mailroom), COII Holt property room, and COII Ellison (I.D. room/property room), as well as Brian Owens, Robert Toole, and Steve Upton" as defendants to this action. [Doc. 80, p.3]

medical staff's deliberate indifference to a serious medical need) and they do not raise the same questions of law or fact to all of the defendants being sued in this case. He is therefore barred from asserting his retaliation and access-to-courts claims in this case, and his request to add those claims is **DENIED**. Likewise, Plaintiff's request to add several prison employees to this action solely in relation to his access-to-courts allegations is **DENIED**.

4.     Americans with Disabilities Act and Retaliation Act Claims

Plaintiff also seeks leave to add claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. He claims that he "is disabled due to the fact that he suffers from lupus[,] a progressive autoimmune disease, which has multiple disabling symptoms . . . such as sore joints, arthritis, kidney damage, weakness, [delusions], and other symptoms unknown to Plaintiff" and that Defendants' alleged deliberate indifference caused him have a bone infection that led to a collapsed knee. [Doc. 74, p. 2]. He further claims that Defendants "continue to deny physical therapy and two scheduled knee surgeries ordered by doctors at . . . Augusta University Hospital" and force him to stand in the shower for 20-30 minutes despite his "no prolonged standing" profile and inability to walk or stand from more than 10-15 minutes. [*Id.*].

Title II of the ADA prohibits public entities from discriminating against disabled individuals or denying them services because of their disabilities. *Owens v. Secretary, Fla.*

*Dept. of Corr.*, 602 F. App'x 475, 477 (11th Cir. 2015) (citing 42 U.S.C. § 12132). Thus, to state a claim under Title II of the ADA, a plaintiff must show:

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

*Id.* (quoting *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007)).

Here, Plaintiff sufficiently alleges that he has a disability, which is defined as "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), in the form of a collapsed knee that limits his ability to stand and walk. *See* 42 U.S.C. § 12102(2)(A) ("[M]ajor life activities include, but are not limited to, . . . walking [and] standing . . . ."). In addition, Plaintiff's potential ADA claim can be construed to be asserted against Defendants McLaughlin and Kegler (who he claims ordered that he be left standing in the shower for prolonged periods of time) in their official capacities,[9] which is in effect a claim against their employer, GDC, a public entity. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Owens v. Secretary, Fla. Dep't of Corr.*, 602 F. App'x at 477 (citing

---

[9] Plaintiff does not specify in his complaint whether he is suing Defendants in their official or individual capacities.

*Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)) ("State prisons are public entities for purposes of the ADA.").

Plaintiff also plausibly alleges that he was discriminated against by GDC. To establish that a public entity discriminated against him, a disabled plaintiff may allege that "the public entity refused to provide a reasonable accommodation" despite his request for accommodation or despite the obviousness of the need for an accommodation. *Medina v. City of Cape Coral*, 72 F. Supp. 3d 1274, 1277-78 (M.D. Fla. 2014). Plaintiff claims that he must use a walker to stand in the shower and that he complained to prison staff of "severe pain and weakness" but is required to stand in the shower for long periods of time regardless. [Doc. 74, p. 2]. These allegations, liberally construed, demonstrate that his need for an accommodation was obvious enough that GDC's failure to provide one was discriminatory.

Plaintiff adequately alleges that his disability was the cause of GDC's discrimination because he states that Defendants McLaughlin and Kegler made him stand in the shower "[o]ut of spite/[malice]." [*Id.*]. "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights." *McCullum v. Orlando Reg'l Healthcare Sys.*, 768 F.3d 1135, 1147 (11th Cir. 2014) (internal citations omitted). That is, he "must show that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood." *Id.* (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012)). Plaintiff's

allegations establish that these Defendants knew of his disability and were deliberately indifferent to it. Thus, Plaintiff has adequately alleged an ADA claim and an RA claim. *See Owens v. Secretary, Fla. Dep't of Corr.*, 602 F. App'x at 477 (citing *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005 (per curiam)) ("The standard for determining liability under the Rehabilitation Act is the same as the standard under the ADA.").

And finally, Plaintiff's ADA and RA claims are sufficiently related to the claims alleged in his original complaint to skirt the restrictions of Federal Rules of Civil Procedure 18 and 20. These claims arise out of and were allegedly caused by the current Defendants' deliberate indifference. Therefore, his first Motion for Joinder of Additional Claims and Parties [Doc. 74] is therefore **GRANTED IN PART** as to these claims.

5. <u>False Imprisonment Claim, GDC Commissioner Homer Bryson, and the State of Georgia</u>

Lastly, Plaintiff seeks to join GDC Commissioner Homer Bryson and the State of Georgia as defendants in order to bring a false-imprisonment claim against them for keeping him confined nearly five months beyond his purported release date. [Doc. 81]. Like his access-to-courts and retaliation claims, this allegation is completely unrelated to the deliberate-indifference claims alleged in his complaint against the current defendants. Therefore, as with the access-to-courts and retaliation claims, Plaintiff is barred from adding this false-imprisonment claim by Federal Rule of Civil Procedure 20(a)(2). He is also barred from joining Homer Bryson and the State of Georgia by Federal Rule of Civil Procedure 20(a)(2) since the claims already asserted in his complaint do not apply to these

parties. ("Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.").[10] His requests to add a false-imprisonment claim and to add Homer Bryson and the State of Georgia as defendants are **DENIED**.

In sum, Plaintiff's Motion to Amend Complaint [Doc. 80] is **DENIED**; his first Motion for Joinder of Claims and Parties [Doc. 74] is **GRANTED IN PART**, such that Plaintiff may amend his complaint <u>only</u> to allege violations of the ADA and RA against Defendants McLaughlin and Kegler in their official capacities; and his second Motion for Joinder of Claims and Parties [Doc. 81] is **DENIED**.

### D. <u>Plaintiff's Motions to Compel Discovery [Docs. 20, 62, 67]</u>

Plaintiff has also filed three Motions to Compel Discovery [Docs. 20, 62, 67][11] that are pending before the Court. Plaintiff argues that Defendants have failed to respond to his interrogatories and his request for production of documents; however, the Court stayed discovery pending the resolution of Defendants' motions to dismiss, which have been discussed herein. Although Plaintiff says that he did not receive an order granting

---

[10] Although Plaintiff claims that Homer Bryson and the State of Georgia must be joined under Federal Rule of Civil Procedure 19, neither party is "required" as defined in the rule. *See* Fed. R. Civ. P. 19(a)(1).

[11] Doc. 20 is titled "Motion Asking Court to Order Defendants to Reply," but in substance, it is a motion to compel responses to discovery.

Plaintiff's request to stay discovery pending the Court's ruling on their motions to dismiss, the docket clearly reflects a text-only order stating, "This is a text only entry; no document issued. **ORDER** granting <u>33</u> Motion to Stay. Discovery in this case shall be stayed pending the resolution of Defendants' <u>32</u> motion to dismiss. Ordered by US MAGISTRATE JUDGE STEPHEN HYLES on 4/18/18." [Doc. 38] (emphasis in original). Accordingly, Defendants were under no obligation to respond to Plaintiff's discovery requests prior to the entry of this Order, and Plaintiff's Motions to Compel Discovery [Docs. 20, 62, 67] are **DENIED**.

### E. <u>Plaintiff's Motions for Default Judgment [Docs. 54, 59]</u>

To the extent Plaintiff seeks an order of default judgment against Defendants, his motions are not ripe given his failure to seek and obtain an entry of default from the Clerk of Court as required under Federal Rule of Civil Procedure 55(b)(1). Plaintiff's status as a *pro se* litigant does not excuse him from following the Federal Rules. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."). His Motions for Default Judgment [Docs. 54, 59] are **DENIED**.

### F. <u>Plaintiff's Motion for Relief from Judgment [Doc. 50]</u>

In his Federal Rule of Civil Procedure 60(b)(6) "Motion for Relief from Judgment," Plaintiff asks the Court to vacate the judgments entered against him in *Smith II* (*Smith v. Owens*, 5:12-cv-00292-MTT (M.D. Ga. Mar. 21, 2013)) and *Smith III* (*Smith v. Owens*, 6:13-

cv-00002-BAE-JEG (S.D. Ga. June 10, 2013)). Rule 60(b) allows the Court to relieve a party from a final judgment for several reasons, including "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Plaintiff claims that *Smith II* and *Smith III* "were dismissed only because this was common practice to do even when the actions are meritable in pro-se cases" and that they "should be vacated for the 'preference of resolving claims on their merits.'" [Doc. 50, p. 2 (quoting *Major v. Coughlin*, No. 94 CIV. 7572, 1997 WL 391121, at *4 (S.D.N.Y. July 11, 1997))]. This Court is not authorized to essentially reverse the judgments of other district court judges. *See Leonard v. Marra*, No. 5:05-CV-262 (CAR), 2005 WL 2319710, at *3 (M.D. Ga. Sept. 22, 2005); *Bolin v. Story*, 225 F.3d 1234, 1240 (11th Cir. 2000) (quoting *Mullis v. United States Bankr. Court*, 828 F.2d 1385, 1392-93 (9th Cir. 1987) ("[T]o allow injunctive relief against federal judges would be to permit a 'horizontal appeal' from one district court to another . . . ."). Plaintiff's Rule 60(b) Motion [Doc. 50] is also **DENIED**.

### G.    Plaintiff's Motion to Appoint Counsel [Doc. 34]

Plaintiff seeks the appointment of counsel because (1) he "is unable to afford counsel"; (2) his "imprisonment will greatly limit his ability to litigate" and "[t]he issues involved in this case are very complex, and will require significant research and investigation"; (3) "[a] trial in this case will likely involve conflicting testimony as well as testimony from expert witnesses, and counsel would better enable plaintiff to present

evidence and cross-examine witnesses"; and (4) he has made "repeated attempts" to secure a lawyer but has been unsuccessful. [Doc. 34].

There is no absolute constitutional right to counsel in prisoner civil rights cases. *See Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993). Instead, the district court has the discretion to appoint counsel, and it should do so only in "exceptional circumstances." *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996). In deciding whether exceptional circumstances exist in the case at hand, the Court considers factors such as "the merits of the plaintiff's claim and whether the claim is factually or legally so complex as to warrant the assistance of counsel." *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989). This case is neither exceptional nor complex so as to warrant the appointment of counsel for Plaintiff. Therefore, Plaintiff's motion is **DENIED**.

### H.    Plaintiff's Motion for Reconsideration [Doc. 31]

In his "Objection to Order Granting Defendants Fowlkes, Johnson, Kegler, McLaughlin, Miller, Searcy, Shirah, and Spikes' Motion for an Extension of Time Within Which to Respond to the Complaint" [Doc. 31], which the Court construes as a motion for reconsideration, Plaintiff takes issue with the Court's April 30, 2018 Order [Doc. 30] granting Defendants' Motion for Extension of Time to Answer [Doc. 26]. "Motions for Reconsideration shall not be filed as a matter of routine practice." LR 7.6, MDGa. Thus, these motions are only appropriate if Plaintiff shows that "(1) there has been an intervening change in the law, (2) new evidence has been discovered that was not

previously available to the parties at the time the original order was entered, or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice." *Bryant v. Walker*, No. 5:10-CV-84, 2010 WL 2687590, at *1 (M.D. Ga. July 1, 2010) (citation omitted).

Defendants requested a 14-day extension from April 3, 2018 to April 17, 2018 to file their answers or, in the alternative, motions to dismiss, explaining that "[a]lthough the service waiver requests were sent out in early February, for reasons that are unclear, counsel only learned of this matter fairly recently and is still attempting to gather information and documents needed to respond appropriately . . . ." [Doc. 26, p. 1]. Moreover, Defendants sought additional time to "locate those defendants who have not, as yet, filed service waivers or requested representation" and to "perhaps file an answer or motion on behalf of all [the defendants], rather than filing [motions and answers] piecemeal and cluttering the docket." [*Id.* at p. 2].

Despite their request, Defendants filed their answers on April 3, 2018, within the deadline established prior to the motion for extension of time. [Doc. 28]. Nevertheless, the Court granted the motion and allowed Defendants 14 days from the date of that Order to file amended answers or responsive pleadings. [Doc. 30]. Plaintiff argues that Defendants' reasons for requesting an extension were inadequate and that the Court's order caused "further injury, unduly [sic] delay, duress and hendering [sic] (delaying) necessary medical treatment required as well as prolonging the pain and suffering being

caused by Defendants . . . ." [Doc. 31, pp. 2-3]. However, Plaintiff was not injured or prejudiced by the Court's Order since Defendants actually filed their answers by the original response deadline and filed no amended answers, and there was no "manifest injustice" justifying reconsideration. *See Bryant, supra.* Accordingly, Plaintiff's Motion for Reconsideration [Doc. 31] is **DENIED**.

## I.    Plaintiff's "Demand for Jury Trial Motion" [Doc. 39]

Plaintiff has also filed a document entitled "Plaintiff's Demand for Jury Trial Motion" [Doc. 39], which the Court construes as a jury demand under Federal Rule of Civil Procedure 38(b). Parties to a civil action have a right to a jury trial that is established in the Seventh Amendment. *See* Fed. R. Civ. P. 38(a); *Thomas v. Home Depot USA, Inc.*, 661 F. App'x 575, 577 (11th Cir. 2016). To invoke the right to a jury trial, a party must "(1) serv[e] the other parties with a written demand—which may be included in a pleading— no later than 14 days after the last pleading directed to the issue is served; and (2) fil[e] the demand in accordance with Rule 5(d)." Fed. R. Civ. P. 38(b). Plaintiff made a proper demand in his complaint, [Doc. 1, p. 20 ("Plaintiff also seeks a jury trial on all issues triable by jury . . . .")], and this demand was never withdrawn, *see* Fed. R. Civ. P. 38 (d). Moreover, Defendants filed jury demands in their Answers. [Doc. 27, p. 15; Doc. 28, p. 14]. Therefore, Plaintiff has been entitled to a jury since the date he filed his complaint, and his Demand for Jury Trial Motion [Doc. 39] is **DENIED as moot**.

**J.    Plaintiff's "Motion to Be Present at Any and All D[a]ubert Hearings" [Doc. 41]**

Plaintiff would also like to be present at all *Daubert* hearings scheduled in this case. Because Plaintiff has been released from prison, he is entitled to attend all hearings scheduled by the Court, without the Court's permission or authorization. Thus, Plaintiff's Motion to Be Present [Doc. 41] is **DENIED as moot**.

**K.    Plaintiff's "Request for Judgment on the Proceedings [Doc. 88]**

Finally, Plaintiff has filed a "Request for Judgment on the Proceedings" [Doc. 88], in which he seems to request that the Court make a final ruling in this case. The Court will make such a ruling if and when meritorious dispositive motions are made or upon the completion of a jury trial; there is no justification for a ruling at this time. Accordingly, Plaintiff's Motion for Judgment on the Proceedings is **DENIED**.

## CONCLUSION

For the reasons outlined in this Order, the Court rules as follows:

1.    Defendants' Motions to Dismiss [Docs. 32, 76] are **DENIED**.

2.    Defendants' Supplemental Motions to Dismiss [Docs. 83, 86] are **GRANTED IN PART**. Plaintiff's claims for injunctive relief against Defendants Fye, Spikes, McLaughlin, Kegler, Searcy, Shirah, Fowlkes, Johnson, Miller, and Jackson are **DISMISSED as moot**. Plaintiff is **ORDERED TO SHOW CAUSE** within 14 days of the date of this Order as to why his claims for injunctive relief against the remaining Defendants should not also be dismissed as moot. Those Defendants will have 10 days to reply to Plaintiff's response.

3.    Plaintiff's Motion to Amend Complaint [Doc. 80] is **DENIED**.

4. Plaintiff's first Motion for Joinder of Claims and Parties [Doc. 74] is **GRANTED IN PART**, such that Plaintiff may amend his complaint only to allege violations of the ADA and RA against Defendants McLaughlin and Kegler in their official capacities.

5. Plaintiff's second Motion for Joinder of Claims and Parties [Doc. 81] is **DENIED**.

6. Plaintiff's Motions to Compel Discovery [Docs. 20, 62, 67] are **DENIED**.

7. Plaintiff's Motions for Default Judgment [Docs. 54, 59] are **DENIED**.

8. Plaintiff's Rule 60(b) Motion for Relief from Judgment [Doc. 50] is **DENIED**.

9. Plaintiff's Motion to Appoint Counsel [Doc. 34] is **DENIED**.

10. Plaintiff's Motion for Reconsideration [Doc. 31] is **DENIED**.

11. Plaintiff's "Demand for Jury Trial Motion" [Doc. 39] is **DENIED as moot**.

12. Plaintiff's "Motion to Be Present at Any and All D[a]ubert Hearings" [Doc. 41] is **DENIED as moot**.

13. Plaintiff's "Request for Judgment on the Proceedings" [Doc. 88] is **DENIED**.

14. And, the stay previously imposed in this case, *see* [Doc. 38], is hereby **LIFTED**.

**SO ORDERED**, this 19th day of November, 2018.

**s/Tilman E. Self, III**
**TILMAN E. SELF, III, Judge**
**UNITED STATES DISTRICT COURT**