IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **BRAJA SMITH,**<br><br>  *Plaintiff,*<br><br>v.<br><br>**FYE,** *et al.,*<br><br>  *Defendants.* | **CIVIL ACTION NO.**<br>**5:17-cv-00406-TES-MSH** |

### ORDER DENYING PLAINTIFF'S MOTION FOR
### RELIEF FROM JUDGMENT/RECONSIDERATION

When Plaintiff Braja Smith didn't appear for trial (despite a great deal of correspondence from not only the Clerk of Court but from the judge as well), the Court dismissed his case under Federal Rule of Civil procedure 41(b) for failure to prosecute and entered Judgment in Defendants' favor.[1] [Doc. 161]; [Doc. 162]. Now, Mr. Smith seeks relief from and reconsideration[2] of that Judgment pursuant to Federal Rule of Civil Procedure 60(b). [Doc. 164]. Relief from a judgment is allowed due to:

---

[1] Out of 17 original defendants, only 3 remained prior to the Court's dismissal: Dr. Chiquita Fye, Clarence Kegler, and Gregory McLaughlin. *See* [Doc. 157, p. 1] *in connection with* [Doc. 158].

[2] Motions under Rule 60(b) and motions for reconsideration are decided under different standards. *Compare Sanders v. Wal-Mart Stores East LP*, --- F. App'x ----, 2020 WL 6501861, at *1 (quoting *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006)) *with Bryant v. Walker*, No. 5:10–CV–84, 2010 WL 2687590, at *1 (M.D. Ga. July 1, 2010) (quoting *Wallace v. Ga. Dep't of Transp.*, No. 7:04-cv-78 (HL), 2006 WL 1582409, at *2 (M.D. Ga. June 6, 2006)). Since Mr. Smith sought reconsideration outside of the 14-day period prescribed by Local Rule 7.6, the Court addresses his Motion solely through the lens of Rule 60(b). LR 7.6, MDGa ("[M]otions for reconsideration shall be filed within fourteen (14) days after the entry of the order.").

>   (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence" which could not have been discovered earlier "with reasonable diligence"; (3) fraud, misrepresentation, or an adverse party's misconduct; (4) a void judgment; (5) satisfaction, release, or discharge, or the prior judgment's reversal or vacatur, or it would not be equitable to apply the judgment prospectively; or (6) "any other reason that justifies relief."

*Sanders v. Wal-Mart Stores East LP*, --- F. App'x ----, 2020 WL 6501861, at *1 (11th Cir. 2020) (quoting Fed. R. Civ. P. 60(b)(1)–(6)) (affirming district court's dismissal of a *pro se* litigant's case). Pursuant to the catch-all provision of Rule 60(b), "any other reason that justifies relief," Mr. Smith contends that the Court should relieve him of the Judgment that dismissed his case. Fed. R. Civ. P. 60(b)(6); [Doc. 164, p. 1].

The Eleventh Circuit Court of Appeals has consistently held that "motions [under this provision] must demonstrate 'that the circumstances are sufficiently extraordinary to warrant relief.'" *Sanders*, 2020 WL 6501861, at *1 (quoting *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006)). "Even then, whether to grant the requested relief is a matter for the district court's sound discretion."[3] *Id.* Since relief under Rule 60(b)(6) is "an extraordinary remedy," it may only be invoked "upon a showing of exceptional circumstances." *Sanders*, 2020 WL 6501861, at *1 (quoting *Griffin v. Swim-Tech Corp.*, 722

---

[3] "Under this standard, a party must show, not only that it may have been permissible or warranted to grant the Rule 60(b) motion, but that denying the motion was 'sufficiently unwarranted as to amount to an abuse of discretion.'" *Sanders v. Wal-Mart Stores East LP*, --- F. App'x ----, 2020 WL 6501861, at *1 n.1 (11th Cir. 2020) (quoting " *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)).

2

F.2d 677, 680 (11th Cir. 1984)). That said, it is Mr. Smith's burden to show that "absent such relief, an 'extreme' and 'unexpected' hardship will result." *Id.*

As grounds for relief, Mr. Smith states that "it would be a[n] [u]due [h]ardship and [b]urden to expect him to arrive 'In-Person' for a jury trial in Macon[,] Georgia[,] when [he] is living in Columbus, Ohio[,] where he must undergo even more surgery due to . . . [Defendants'] deliberate and malicious indifference to his 'serious medical needs.'" [Doc. 164, p. 2]. However, Mr. Smith never told the Court he might need his trial continued because of an upcoming surgery. Second, Mr. Smith blames his failure to prosecute on "a confusing email" he received "directly from the Court." [*Id.* at p. 3]. The Court will address his second ground for relief—the Court's "confusing email"—first. [*Id.*].

1. **Emails**

To begin, this case is over three years old. [Doc. 1, p. 22]. For the most part, Mr. Smith's case took the normal course. On January 8, 2020, the Court filed an Order [Doc. 138] adopting[4] the final Report and Recommendation [Doc. 136] which left three claims for resolution at trial: (1) an Eighth Amendment claim under 42 U.S.C. § 1983 for deliberate indifference against Defendant Fye for housing Mr. Smith in general population; (2) an Eighth Amendment claim under 42 U.S.C. § 1983 for deliberate

---

[4] It should be noted that neither party filed an objection to the United States Magistrate Judge's Report and Recommendation ("R&R") [Doc. 136] filed on December 19, 2020. *See* [Doc. 141, p. 1]. The next day, the Clerk of Court mailed Mr. Smith a copy of the R&R.

3

indifference against Defendant Kegler for interfering with Mr. Smith's medical treatment; and (3) Mr. Smith's claims under the Americans with Disabilities Act, 42 U.S.C. § 12132, and Rehabilitation Act, 29 U.S.C. § 794, against Defendants Kegler and McLaughlin for leaving Mr. Smith in the shower for prolonged periods of time. [Doc. 138, pp. 1–2]. In that same Order, the Court told the parties that "trial [was] scheduled to begin on February 10, 2020[.]" [*Id.* at p. 2] (emphasis omitted).

In preparation for trial, the Court set a pretrial conference for January 14, 2020. [Doc. 137]. As scheduled, the Court held the pretrial conference, but Mr. Smith was a "no show." [Doc. 140, p. 1]. Due to Mr. Smith's absence, the Court issued a Show Cause Order [Doc. 141] directing Mr. Smith to explain "why his case should not be dismissed" based on his failure to prosecute his case. [Doc. 141, p. 1 (citing Fed. R. Civ. P. 41(b))]. In the Show Cause Order, the Court clearly informed Mr. Smith that "'[a] party's failure to appear for proceedings, such as a pretrial conference, is sufficient to justify dismissal' under Federal Rule of Civil Procedure 41(b)." [Doc. 141, p. 2 (quoting *St. John's Shipping Co. v. Vessel known as ANNEMARIE B.*, No. 8:05-513-T-EAJ, 2007 WL 3306947, at * 3 (M.D. Fla. Nov. 6, 2007))]. But, because Rule 41 dismissals are "serious remed[ies]," the Court provided Mr. Smith the opportunity to explain his absence. [Doc. 141, p. 3 (quoting *Graves v. Kaiser Aluminum & Chem. Co.*, 528 F.2d 1360, 1362 (5th Cir. 1976))].

4

Mr. Smith adequately responded, and the Court rescheduled the pretrial conference for March 12, 2020.⁵ [Doc. 146]; [Doc. 147]. This time, the pretrial conference went off without a hitch: Mr. Smith was present and the Court ruled on pending pretrial motions and discussed with Mr. Smith what he—as a *pro se* litigant—could expect at trial. [Doc. 153]. Immediately after the pretrial conference, the Court filed the parties' Pretrial Order [Doc. 152]; however, due to the coronavirus ("COVID-19") pandemic, the Court had to continue Mr. Smith's case numerous times—from April 2020, to June 2020, then to August 2020, and then finally, to its Trial Term beginning on October 13, 2020.⁶

---

⁵ Just days before Mr. Smith filed his Response [Doc. 146], however, the magistrate judge's final R&R filed on December 19, 2020, and the Court's first Order for Pretrial Conference [Doc. 137] came back as undeliverable. [Doc. 142]; [Doc. 143]; *see also* n.4, *supra*. Mr. Smith knows how to properly notify the Court of an address change. He did one back in 2018. *See, e.g.*, [Doc. 82]. Although Mr. Smith contends that he "did send in a notice of address change to 5236 Meadowknoll Ln.[,] Columbus, O[hio] 43220[,]" he did no such thing. [Doc. 146, p. 1]. He merely crossed out an old address and wrote the new one below it on a random Certificate of Service [Doc. 130] filed months earlier. This is not proper notification. *See* [Doc. 148, p. 1 n.1]. Nevertheless, thanks to a diligent search, one of the members of the Court's Clerk's Office found the correct address needed for Mr. Smith and received permission from the undersigned's Chambers to update his address to the one found on that Certificate of Service. *See* [Doc. 130, p. 1]. The Court hastens to point out that it could have easily dismissed Mr. Smith's case at this point due to his failure to advise the Court of an address change and failure to obey a court order; however, the Court was intent on doing anything it could to be as fair as possible to Mr. Smith and to ensure that his case was tried. *See, e.g.*, [Doc. 6, pp. 15, 17]. However, there are limits on what courts can or should do for *pro se* litigants. They, not the courts, bear the ultimate responsibility for their cases.

⁶ Unlike most *pro se* litigants, the Court made an exception for Mr. Smith and allowed him to enjoy the convenience of electronic filing through the Court's case management system, CM/ECF. [Doc. 148, p. 1, n.1]. In fact, as early as February 3, 2020, but definitely by July 6, 2020, once it was confirmed, Mr. Smith's email address was on the record for purposes of receiving notifications of filings. [*Id.*]; *see also* [Doc. 169-1, pp. 1–2 ("Also, Mr. Smith, would you please confirm your correct email address? Is it 'brajasmith7@gmail.com' with an 'h' or 'brajasmity7@gmail.com' with a 'y'? Your email address on [Doc. 146 at p. 2] was difficult to decipher.")]; [Doc. 159, p. 1 (noting that "[o]n February 3, 2020, [Mr. Smith] provided . . . an email address")]. Mr. Smith confirmed that his email address was "with a 'y.'" [Doc. 169-1, p. 1].

5

Given Mr. Smith's history, the Court emailed the parties on August 28, 2020. [Doc. 169-3, p. 1]. In that email, the Court stressed that it was "planning on setting this case down for trial on Oct[ober] 13, 2020[,]" and that they should "plan accordingly unless there [was] a way to resolve this case prior to trial." [*Id.*]. Mr. Smith responded just hours later, "Sounds good, thank you." [*Id.*].

Just to clarify, the Court's October 2020 Trial Term lasted two weeks. The first week started on October 13, 2020, and the second week started on October 19, 2020.[7] Then, on October 8, 2020, the Court sent a second email to the parties telling them that "[t]his trial remains scheduled for Monday week, October 19, 2020." [Doc. 169-4, p. 1]; *see also* [Doc. 169-5, pp. 3–4]. This email reinforced several things. First, it reminded Mr. Smith that the Court had sent him "multiple emails and mailings . . . to advise him of the trial and to see if he wishes to continue with the case." [Doc. 169-4, p. 1]; *see also* [Doc. 169-5, p. 4]. Second, it clearly informed the parties that the Court retained the authority to keep Mr. Smith's case on its trial calendar despite the moratorium on jury trials within the Middle District of Georgia. [Doc. 169-4, p. 1]; *see also* [Doc. 169-5, p. 4]. Throughout the COVID-19 pandemic, the Middle District of Georgia's standing orders

---

[7] In the midst of queuing Mr. Smith's case for trial, the Court issued another, unrelated Order [Doc. 157] regarding an unserved Defendant—Defendant Toby. Mr. Smith ignored this Order as well and failed to respond to the show cause deadline. So, the Court dismissed Mr. Smith's claims against this unknown and unserved defendant pursuant to Federal Rule of Civil Procedure 4(m). [Doc. 158].

It bears noting that even though Mr. Smith's mailing issues have long-since been ironed out, he never attempted to object to the magistrate judge's final R&R or to the Court's dismissal of his claims against Defendant Toby.

6

clearly explain that the district "may extend its moratorium on jury trials[;] however, even under such an order, each judge has the authority to try [this and] any case[] which it deems necessary to try." [Doc. 169-4, p. 1]; *see also* [Doc. 169-5, p. 4]. As stated in this second email, the Court wanted to keep Mr. Smith's trial as scheduled, but it "need[ed] to know" whether Mr. Smith "intend[ed] on moving forward." [Doc. 169-4, p. 1]; *see also* [Doc. 169-5, p. 4]. So, candidly, Mr. Smith and Defendants were told that if they didn't hear from the Court, they "should assume the case will proceed on the scheduled day." [Doc. 169-4, p. 1]; *see also* [Doc. 169-5, p. 4]. Third, and finally, this email demonstrates the Court's extensive efforts in trying to communicate with Mr. Smith:

> Mr. Smith, if you intend to try this case, please let me know ASAP. Also, if the parties wish to stipulate to a bench trial please let me know. I[f] both parties agree to a bench trial, then I will hold it within the next 30 days. Mr. Smith, please let me hear from you.

[Doc. 169-4, p. 1]; *see also* [Doc. 169-5, p. 4].

On September 15, 2020, and consistent with the Court's emails, the parties received a CM/ECF notice informing them that the jury trial for Mr. Smith's case "set for" October 13, 2020, was "reset for" October 19, 2020. *See* [Doc. 159, p. 16 ("Jury Trial previously set for 10/13/2020 is now reset for 10/19/2020 at 9:00 AM in Macon before US DISTRICT JUDGE TILMAN E SELF III.")]; *see also* [Doc. 169-2, p. 1]. With October 19, 2020, quickly approaching, the Court was concerned that it had not heard from Mr. Smith especially given the emails regarding the upcoming start-date for his trial. Just to be sure that Mr. Smith was informed of the trial, the Court instructed the Clerk of Court

7

to send Mr. Smith a "letter [via] snail mail" directing him to contact the Clerk's Office and inform them whether he intended to proceed or not. [Doc. 169-5, p. 1]. On October 7, 2020, the Clerk followed the Court's instructions and sent a letter to Mr. Smith requesting that he "[p]lease notify us of [his] status." [Doc. 159, p. 1]. Despite all of these efforts, Mr. Smith never contacted the Clerk's Office or the Court.

As scheduled, the Court called Mr. Smith's case for trial on October 19, 2020, and when Mr. Smith was nowhere to be found, it exercised its "inherent power" to control its docket and dismissed Mr. Smith's case for lack of prosecution. [Doc. 160]; [Doc. 161]. Now, in an effort to show "exceptional circumstances," Mr. Smith claims he was confused and "did not know he was supposed to be present on the 19th of Oct[ober] 2020." *Sanders*, 2020 WL 6501861, at *1 (quoting *Cano*, 435 F.3d at 1342); [Doc. 164, p. 3].

To support this claim, Mr. Smith points to an "announcement e-mail message generated by Court action through the CM/ECF system." [Doc. 164-2, p. 16]. To separate this CM/ECF-generated email from other correspondence, the Court refers to it as the "COVID Email." The COVID Email states in pertinent part: "The Middle District of Georgia has entered Standing Order 2020-12. The standing order extends the COVID-19 jury trial moratorium through January 3, 2021[,] and the time period of excusable delay under the Speedy Trial Act." [*Id.*]. Therein lies the source of confusion. Mr. Smith says that he, "[a]s any layperson . . . would think," thought all jury trials "were being postponed until" January 3, 2021. [Doc. 164, p. 3].

8

However, Mr. Smith even admits that the COVID Email "did not actually consern [*sic*] [his] trial." [*Id.*]. Mr. Smith's candor, however, has its limits. In making this admission, Mr. Smith boldly asserts that because "the [C]ourt sen[t] [the COVID Email] to him a few days before" his trial was scheduled to begin, it "must be an attempt to confuse or thwart [him]." [*Id.*]. Bottom line, however, there is no legitimate basis for Mr. Smith's purported confusion. And, given the Court's repeated and extensive efforts to communicate with him, the Court certainly didn't thwart his chance to try his case. Rather, the Court made every effort to give him that chance.

Three days before trial, Defendants' counsel sent an email to the Court to "reach[] out to see where we are on this case." [Doc. 169-4, p. 1]; [Doc. 169-5, pp. 2–3]. In her email (on which Mr. Smith is copied), she also discussed the same COVID Email and specifically noted that the Middle District of Georgia "continued the jury trial moratorium until January." [Doc. 169-4, p. 1]; [Doc. 169-5, pp. 2–3]. However, she also mentioned the carve-out provision of Standing Order 2020-12 that allows judges "to go forward with jury trials upon a finding of 'compelling circumstances.'" [Doc. 169-4, p. 1]; [Doc. 169-5, pp. 2–3]. In reply, the Court conveyed to Defendants' counsel, as well as to Mr. Smith, that it had "not heard back" from Mr. Smith since he replied, "Sounds good, thank you[,]" to its initial email. [Doc. 169-4, p. 1]; [Doc. 169-3, p. 1]. Not only had Mr. Smith not responded to the Court's emails, he also never wrote back, emailed, or called the Clerk of Court to give a status update in response to the Clerk's letter sent on

9

October 7, 2020. [Doc. 159]. In order to be as clear as possible, the Court concluded its reply by saying, "I[f] Mr. Smith doesn't appear on Monday, then [it] intend[s] to dismiss his case for lack of prosecution[.]" [Doc. 169-4, p. 1]. Again, Mr. Smith received each of these emails and never responded to anyone.

Since Mr. Smith didn't appear for trial on the morning of Monday, October 19, 2020, the Court dismissed his case for failure to prosecute pursuant to Rule 41(b) and entered an Order to that effect on that same day. [Doc. 160]; [Doc. 161 (first citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962) and then citing Fed. R. Civ. P. 41(b))]. Mr. Smith states that the email exchange—but not the COVID Email—between the Court, Defendants' counsel, and him (and apparently a separate email between Mr. Smith and Defendants' counsel conveying Defendants' offer to settle the case) regarding the carve-out provision "did not post on [his] [G-]mail account until after the case was dismissed." [Doc. 164, p. 3]; *see also* [Doc. 164-2, p. 10].

Four days after the dismissal, Mr. Smith sent an email explaining that he "was confused on how to proceed" after receiving the COVID Email. [Doc. 169-5, p. 1]. Specifically, he states, "What confused me was the trial memorandum stating that all jury trials were being put off til [sic] Jan[uary] 3rd." [*Id.*]. He reiterates that he "was very confused by th[e] [COVID Email] since it was sent to [his] email [address] concerning the proceedings." [*Id.*].

Mr. Smith's submissions in support of his Rule 60(b) motion clearly show that he received the COVID Email on October 8, 2020. [Doc. 164-2, p. 16]. That same day, the Court sent its second email—on October 8, 2020, at 1:16 PM—telling the parties that Mr. Smith's "trial *remains scheduled*." [Doc. 169-5, p. 4] (emphasis added); [Doc. 169-4, p. 1]; [Doc. 164-2, p. 6 (showing a screenshot of Mr. Smith's G-mail account Inbox)]. If Mr. Smith was confused—that the COVID Email might trump the follow-up email that emphasized the Court's clear intention to still conduct his trial and that it remained scheduled—he had countless resources at his disposal to clear it up. He had the judge's email address, the Clerk of Court's email address, the judge's Courtroom Deputy's email address, and the judge's law clerk's email address, all at the tip of his fingers. *See, e.g.*, [Doc. 169-3, p. 1]; [Doc. 159, p. 1]; [Doc. 169-1, pp. 1–2]. Of course, the website for the Middle District of Georgia also prominently displayed the publicly-posted phone numbers for the judge's Chambers as well as the Clerk's Office. Mr. Smith *chose* not to email a single person that works for the Court. Mr. Smith *chose* not to pick up his phone and call anyone to ask what is going on with his case. He *chose* to stay silent. And, it bears noting that he doesn't deny receiving the Clerk's letter asking him to contact the Clerk's Office.

He simply ignored every opportunity to clear up any confusion, which he admits he had. And because he didn't try to get any clarification when he had the means to do so, he can't now complain about it. He alone is responsible for the consequences of his

11

actions and in actions. Accordingly, the Court, after considering all of the circumstances and material submitted by Mr. Smith, exercises its considerable discretion and does not find that Mr. Smith's actions—or lack thereof—demonstrate circumstances that are sufficiently extraordinary to warrant relief. *Sanders*, 2020 WL 5601861, at *1 (quoting *Cano*, 435 F.3d at 1342).

### 2. <u>Medical Concerns</u>

In addition to the "confusing email," Mr. Smith also states that "he is not physically fit for showing up in [a] state so far away during the [g]lobal C[OVID]-19 [p]andemic." [Doc. 164, p. 2]. As stated above, not once did Mr. Smith voice any health-related concerns to the Court during the two months preceding his trial nor did he ask for a continuance. Only *after* the Court dismissed his case did Mr. Smith, via his Rule 60(b) motion, mention a surgery that was scheduled for early November 2020. [*Id.*]; *see also* [Doc. 169-5, p. 1]. In fact, the last thing the Court heard from Mr. Smith before it dismissed his case was "Sounds good, thank you." [Doc. 169-3, p. 1]. There was nothing about any concerns related to COVID-19 or anything about a then-upcoming surgery. By Mr. Smith's own words, he was ready for trial.

Mr. Smith can't bring these concerns to the Court's attention after it dismissed his case. This "extreme" hardship should have brought to the forefront of the Court's attention while his case was pending. Had he, his case would, undoubtedly, still be pending. Based on Mr. Smith's history and the Court's "above and beyond" efforts to

12

ensure Mr. Smith's presence at his own trial, the Court finds that he has failed to meet his burden of showing the "exceptional circumstances" needed to be relieved from the Court's Judgment. *Sanders*, 2020 WL 5601861, at *1 (quoting *Cano*, 435 F.3d at 1342). Mr. Smith had full, fair, and unimpeded opportunities to reach out to the Court in an effort to clarify any confusion he claims to have had, and because he made no such efforts, his Motion for Relief from Judgment [Doc. 164] is **DENIED**.

**SO ORDERED**, this 12th day of November, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
